The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v*. JULIUS WILE SONS & CO., INC. (No. 4596) [1]

[1] C. A. D. 404.

United States Court of Customs and Patent Appeals, March 1, 1949

*David N. Edelstein,* Assistant Attorney General (*Charles J. Miville,* Acting Head of Customs Division, and *Richard F. Weeks,* special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for appellee.

[Oral argument February 2, 1949, by Mr. Weeks, Mr. Edelstein, and Mr. Colburn]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, rendered in conformity with its decision, C. D. 1089, sustaining the protest of the importer, appellee, in which it was claimed that so-called Liqueur Veritas was dutiable at only $2.50 per proof gallon under paragraph 802 of the Tariff Act of 1930, as modified by the Trade Agreement with France, T. D. 48316, the Trade Agreement with Argentina, T. D. 50504, or the Trade Agreement with Mexico, T. D. 50797, rather than as an imitation of absinthe as assessed by the collector at the port of New York at $5.00 per proof gallon, in accordance with the provisions of paragraph 812 of that act.

Paragraph 802 of the Tariff Act of 1930 reads:

PAR. 802. Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, arrack, absinthe, kirschwasser, ratafia, and bitters of all kinds containing spirits, and compounds and preparations of which distilled spirits are the component material of chief value and not specially provided for, $5 per proof gallon.

The pertinent part of paragraph 812, *supra,* reads:

PAR. 812. No lower rate or amount of duty shall be levied, collected, and paid on the articles enumerated in paragraph 802 of this schedule than that fixed by law for the description of first proof; but it shall be increased in proportion for any greater strength than the strength of first proof, and all imitations of brandy, spirits, or wines imported by any names whatever shall be subject to the highest rate of duty provided for the genuine articles respectively intended to be represented, and in no case less than $5 per proof gallon:  *  *  *

The Trade Agreement with France, T. D. 48316, reduced the rate of duty on brandy, cordials, liqueurs, kirschwasser, and ratafia from $5.00 per proof gallon to $2.50 per proof gallon.

The Trade Agreement with Argentina, T. D. 50504, reduced the rate of duty on brandy, cordials, liqueurs, kirschwasser, ratafia, and bitters of all kinds containing spirits, from $5.00 per proof gallon to $2.50 per proof gallon.

The Trade Agreement with Mexico, T. D. 50797, reduced the rate of duty on spirits manufactured or distilled from grain or other material, and compounds and preparations of which distilled spirits are the component material of chief value, not specially provided for, from $5.00 per proof gallon to $2.50 per proof gallon.

It is conceded by counsel for the parties that, in accordance with the ruling of the Pure Food & Drug Administration, United States Department of Agriculture, 1912, the importation of absinthe is prohibited by law.

Absinthe is defined by Webster's New International Dictionary as follows:

A green alcoholic liquor containing oils of wormwood and anise, and other aromatics, and used extensively in France until its manufacture and consumption were prohibited in 1915. It is much more intoxicating than other liquors, and produces nervous derangement.

It appears from the record that the essential characteristic of absinthe is wormwood, or *Artemisia absinthium*, which has a bitter taste, and that "The wormwood acts powerfully upon the nerve-centres, and causes delirium and hallucinations, followed in some cases by idiocy," (Encyclopaedia Britannica, 1947 ed.) which was quoted, among other things, by the trial court in its decision.

It further appears from the record that the involved merchandise is a liqueur that has a distinctive anise and licorice flavor; that it is sweet and does not contain the oil of wormwood which gives absinthe a bitter taste; that it has no synthetic substance which simulates wormwood; that the distinctive anise and licorice flavor imparts an added zest to mixed drinks with which the imported product is used; that it differs from absinthe in flavor and color and does not produce the deleterious effect on the nervous system as does absinthe; that the term "Liqueur Veritas" means a true liqueur; that anise and anisette are liqueurs or cordials; and that, although they are spirits, they are more specifically known as cordials or liqueurs.

Exhibit 1, introduced by appellee, is an official sample of the merchandise involved in the instant case. It contains no label to indicate that it is in any respect an imitation of absinthe.

The Government introduced Illustrative Exhibit C, a bottle containing a substance in all respects identical with that here involved. That bottle bears a label on which it is stated, among other things,

that "Liqueur Veritas has the exact properties of Absinthe except that it does not contain any Wormwood," and that it is a harmless absinthe substitute.

The term "substitute," as defined by Webster's New International Dictionary, is as follows:

> 1. A person or thing put in place of another; one acting for, taking the place of, or held in readiness to replace, another.

Obviously a thing may be used as a substitute for another without being similar to the thing for which it is used as a substitute. Furthermore, it does not appear when Exhibit C was imported into the United States or bought and sold in the United States, and no such label appears on the bottles containing the merchandise here involved. As we stated in the case of *Stephen Rug Mills* v. *United States*, 32 C. C. P. A. (Customs) 110, 113, C. A. D. 293:

> There can be no question about the common meaning of the word "imitation" as defined by all the lexicographers. It is an act of imitating or copying, or that which is made or produced by imitating, or a simulated reproduction or representation of the thing sought to be copied or imitated.

Following the definition of this court as judicially determined in the *Stephen Rug Mills* case, *supra*, we are of opinion that the involved Liqueur Veritas is not similar to, nor is it an imitation of, absinthe. We may say in conclusion that the trial court in an exhaustive opinion has stated the evidence in the case and that we agree with its reasoning and its conclusion. In view of our conclusion, other issues raised by counsel for the parties need not be considered.

The judgment is *affirmed*.